**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TIFFANY AGEE,**<br>**individually and on behalf of all**<br>**others similarly situated,** | ) )<br>)<br>) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22 C 4744** |
| | ) | |
| **THE KROGER CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Tiffany Agee filed suit against The Kroger Company. Kroger markets and sells over-the-counter (OTC) adhesive patches containing lidocaine, a topical anesthetic used to treat pain symptoms. Agee alleges that the product's labeling is misleading in a number of ways. She asserts claims individually and on behalf of a proposed multi-state class under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (Count 1) and the state consumer fraud acts of various states listed in the complaint (Count 2). Agee also asserts claims, individually and on behalf of the proposed class, for breach of warranty (Count 3); negligent misrepresentation (Count 4); common law fraud (Count 5); and unjust enrichment (Count 6). Kroger has moved dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and under Rule 12(b)(1) for lack of subject matter jurisdiction. For the reasons stated below, the Court dismisses counts 3 and 5 and strikes Agee's request for injunctive relief but otherwise denies Kroger's motion.

**Background**

The Court takes the following facts from the allegations in Agee's complaint.

Kroger is an Ohio corporation that operates a chain of supermarkets and distributes its

own "generic" or "store brand" private-label products.  These products are manufactured

by third parties and sold under the Kroger name.  The lidocaine patches at issue in this

case are one such product.

Agee alleges that between June 2021 and November 2021, she purchased the

product at issue at locations including Food 4 Less, a store located at 4821 W. North

Avenue in Chicago.  In support of its motion to dismiss, Kroger submitted a copy of the

front and back of the product packaging:





Def.'s Mot. to Dismiss, Ex. A.  Agee alleges that the label misleadingly promises "Up to 8 Hours of Relief," at "Maximum Strength," and that the patch can be used "For Temporary Relief of Pain," to "Desensitize Aggravated Nerves," and for "Numbing Relief."  Compl. ¶¶ 3, 25.

The alleged misrepresentations fall into three categories.  First, Agee contends that the package label's use of the phrase "Up to 8 Hours of Relief" is misleading

3

because, she alleges, the patch regularly peels off the bodies of users within a few hours of being applied and often with minutes of application, thus limiting the amount of relief it provides. *Id*. ¶ 16. In support of this contention, Agee points to a report by the Food and Drug Administration (FDA) that found that "approximately 70% of concerns stemming from lidocaine patches involve their poor adhesion," *id*. ¶ 9, as well as a peer-reviewed study published in January 2021 by the Journal of Pain Research. Agee alleges that the study determined that "0% of generic prescription lidocaine patches had a >90% adhesion rate to the study's subjects after 12 hours, i.e., essentially no part of the product lifting off the skin." *Id*. ¶ 10. The study also allegedly found that "a newly developed 1.8% lidocaine patch technology, which is bioequivalent to 5% lidocaine patches, maintained a mean adhesion >90% across all time points." *Id*. ¶ 13. Agee acknowledges that the study tested only generic prescription lidocaine patches, but she alleges that Kroger's product, "which has not undergone rigorous approval process required by the FDA and use[s] the same outdated and defective adhesion technology as the generic lidocaine patches, fare[s] no better." *Id*. ¶ 14.

Agee alleges that Kroger's use of the phrase "Up to 8 Hours" on its label leads consumers to expect that the product will remain applied for "no less than eight hours or even longer." *Id*. ¶ 17. Agee also alleges that the "[d]irections confirm the Product will adhere to the user's skin for the full eight hours" because the package instructs the user to remove the patch "after at most 8 hours of application." *Id*. ¶ 18. Because the product does not adhere to the skin for eight hours (thus diminishing its ability to relieve pain), Agee alleges, this instruction on the back of the product–as well as the phrase "Up to 8 Hours of Relief" on the front of it–are themselves misleading and also render

4

misleading the representation "Maximum Strength."

Next, Agee alleges that the term "Maximum Strength" is misleading for two additional reasons. First, she alleges that because the amount of lidocaine delivered by the patch is reduced due to its tendency to detach from the body, the "efficacy of delivery and absorption of the active ingredient is greatly reduced" and can't fairly be called "maximum strength." *Id.* ¶ 26. Agee also alleges that the term "Maximum Strength" tells consumers that the patch "contains and delivers the maximum amount of lidocaine available in patch form and is superior, or at least equivalent, in efficacy and results to other OTC and prescription-strength lidocaine patches." *Id.* ¶ 27.

Finally, Agee alleges the language stating that the patch will "Desensitize Aggravated Nerves" and provide "Numbing Relief" "For Back, Neck, Knees, Shoulders & Elbows" "falsely impl[ies] the Product completely blocks and desensitizes nerves and pain receptors, eliminates responses to painful stimuli, and can treat neuropathic and musculoskeletal pain, including back and spinal pain." *Id.* ¶¶ 29, 30.

Agee alleges that these representations and omissions mislead consumers about the quality of the product. She alleges that at the time of her purchase, she understood the label to represent that the patch "would reliably adhere to her body and deliver a 4% lidocaine dose for 8 hours." *Id.* ¶ 69. Agee says that she would not have purchased the product or would have paid less for it if she had known that some or all of the label's representations were untrue. *Id.* ¶¶ 70-72, 74.

Kroger has moved to dismiss each of the counts in Agee's complaint. It contends that Agee has failed to state a claim for any of the six claims she has brought and that she lacks standing to pursue the consumer fraud multi-state class claims. Kroger also

asks the Court to strike Agee's request for injunctive relief for lack of standing to pursue that type of relief.

## Discussion

In deciding a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2019). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Further, any fraud-based claims that Agee asserts are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), and thus "the circumstances constituting fraud" must be pleaded with particularity. *See id.*

## A.    Count 1, ICFA

To succeed on a private claim under the Consumer Fraud Act, a plaintiff must prove "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 180, 835 N.E.2d 801, 850 (2005).

### 1.    Deceptive practices

As previously discussed, Agee's complaint alleges deceptive practices in the form of the three categories of misrepresentations and omissions found on the label of

Kroger's lidocaine patches.  A label is deceptive if it is likely to mislead a reasonable consumer in a material respect.  *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020).  Kroger contends that Agee has failed to allege a deceptive act because no reasonable consumer would interpret the product labeling in the way Agee has and thus be misled by it.  The Court disagrees, as least regarding the terms "Up to 8 Hours of Relief," and, in part, "Maximum Strength."  The Court disagrees, however, with Agee's contention that the label's statement that the product "Desensitize[s] Aggravated Nerves" and provides "Numbing Relief" "For Back, Neck, Knees, Shoulders & Elbows" is misleading.  Compl. ¶ 29.

### a.    "Up to 8 Hours of Relief"

Kroger contends that the product label's representation that it would deliver "Up to 8 Hours of Relief" is not deceptive or likely to mislead reasonable consumers because the phrase "up to" means that the reference to eight hours is "'a ceiling,'" "'not a floor.'"  Def.'s Mot. to Dismiss at 6 (quoting *Brodsky v. Aldi Inc.*, No. 20 C 7632, 2021 WL 4439304, at *5 (N.D. Ill. Sept. 28, 2021)).  Kroger also cites the directions on the back of the product that tell users not to apply one patch to the targeted area "more than 3 to 4 times daily," and to remove the patch after "at most 8 hours of application."  Def.'s Mot. to Dismiss, Ex. A.  Kroger says this, too, makes it reasonably clear that the label is not promising eight hours of pain relief.

The Court agrees with Kroger to this extent:  contrary to Agee's contention, "up to 8 hours" quite plainly does not mean "no less than 8 hours or even longer."  But this does not mean that Kroger is out of the woods on the label's "up to 8 hours" claim.  It's plausible to contend that this language on the label indicates the patch can provide pain

relief for *as long as* eight hours, and the label says nothing about other factors relating to the patch that may—or, as Agee contends, will—result in a much shorter period of pain relief. To this extent, Agee plausibly alleges that the label is likely to mislead a reasonable consumer in a material respect.

*Brodsky*, on which Kroger relies, is not factually analogous to this case. In *Brodsky*, the plaintiff contended that a coffee canister label indicating that the cannister "makes up to 210 6 oz cups" was misleading because it produced only 137 cups for one variety and 173 for another. *Brodsky*, 2021 WL 4439304, at *1. Judge Robert Gettleman held that the "up to" language on the label did not promise the maximum yield because the label also clearly described various factors that could affect yield, such as the number of servings made at once and the desired strength. In contrast, the label at issue in this case included no identification of any factors that might limit the amount of time that the patch would remain adhered to the body and deliver relief.

In addition, the instruction to limit application of the lidocaine patches to three to four times a day still implies that a user could have at least three patches on for as long as eight hours (less a minute) within a twenty-four hour period. The same is true for the directive to remove the patch after *"at most"* eight hours. "At most" may imply that eight hours is the upper limit for application, but contrary to Kroger's contention, it does not suggest to a reasonable consumer that she cannot expect to have a patch applied and effective throughout an eight-hour period.

The Court concludes that Agee has plausibly alleged that when consumers read "Up to 8 Hours of Relief," they are likely to believe that the product will remain on the body and provide relief for as long as eight hours. Because Agee has also alleged that,

to the contrary, Kroger's lidocaine patches regularly peel off the body "within a few hours, and often minutes, after being applied," she has stated a claim that the product's label is deceptive under ICFA. Compl. ¶ 16.

**b. "Maximum Strength"**

The next issue involves Agee's contention that a reasonable consumer reading the words "Maximum Strength" together with the phrase "Up to 8 Hours of Relief" would expect that the active ingredient (4% lidocaine) will be delivered throughout that period. Agee alleges that "[t]he result of the failure to adhere to the user's bodies is that the Product does not deliver the 'Maximum Strength' amount of lidocaine in patch form." *Id*. ¶ 20. Because Agee has plausibly alleged that the patch does not remain on the body for the promised time period, one may also plausibly infer that the product does not deliver the "Maximum Strength" of the active ingredient as promised—thus rendering this statement deceptive as well.

The Court disagrees, however, with Agee's contention that the term "Maximum Strength" tells consumers that the product "contains and delivers the maximum amount of lidocaine available in patch form and is superior, or at least equivalent, in efficacy and results to other OTC and prescription-strength lidocaine patches." *Id.* ¶ 27. "The phrase 'Maximum Strength' on the label plainly refers to the strength of the medication, not efficacy or results." *Stevens v. Walgreen Co*., No. 21-CV-10603, 2022 WL 3681279, at *5 (S.D.N.Y. Aug. 24, 2022). Agee does not contend that Kroger's product actually has a lesser or equal amount of lidocaine than non-maximum-strength patches on the market. The label also clearly identifies the amount of lidocaine as 4%. A reasonable consumer would not expect the phrase "Maximum Strength" to reference

9

the product's efficacy compared to *prescription-strength* lidocaine patches. As Kroger notes, the label invites consumers to "COMPARE TO the active ingredient of SALONPAS® LIDOCAINE PATCH See back panel*." Def.'s Mot. to Dismiss, Ex. A. SALONPAS® is another OTC product, not a prescription product.

### c. "Desensitize Aggravated Nerves," "Numbing Relief," "For Back, Neck, Knees, Shoulders & Elbows"

Agee contends that the label's statement that the product "Desensitize[s] Aggravated Nerves" and provides "Numbing Relief" "For Back, Neck, Knees, Shoulders & Elbows" is misleading. *Id*. ¶ 29. She further contends that these phrases "falsely imply the Product completely blocks and desensitizes nerves and pain receptors, eliminates responses to painful stimuli, and can treat neuropathic and musculoskeletal pain, including back and spinal pain." *Id*. ¶ 30. These are not viable contentions.

No reasonable consumer would read the product's labeling, which clearly states it is meant for "*temporary* relief of pain," Def.'s Mot. to Dismiss, Ex. A (emphasis added) as indicating that it completely blocks pain and desensitizes nerves. Nor would a reasonable consumer expect to receive the sort of "medical treatments requiring a prescription," Compl. ¶ 31, when using an OTC transdermal patch that she is directed to stick to a particular part of her body for "temporary pain relief" for "Up to 8 Hours." Def.'s Mot. to Dismiss, Ex. A.

For these reasons, Agee has not plausibly alleged facts that would entitle her to relief under ICFA based on the contention that Kroger's labeling misleads consumers to believe that the product "completely blocks and desensitizes nerves and pain receptors, eliminates responses to painful stimuli, and can treat neuropathic and musculoskeletal pain, including back and spinal pain." Compl. ¶ 31.

10

2.      **Actual damage**

To pursue a claim under the ICFA, a plaintiff must suffer "actual damage."  *DOD Techs. v. Mesirow Ins. Servs., Inc.*, 381 Ill. App. 3d 1042, 1051, 887 N.E.2d 1, 9 (2008).  Kroger contends that Agee's claims are deficient because she has not alleged that she suffered actual damage.  The Court disagrees.

"[A]ctual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'"  *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (quoting *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 628, 888 N.E.2d 1190, 1197–98 (2008)); *see also Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 653, 762 N.E.2d 1, 10 (2001) ("Illinois courts have generally allowed damages claims based on diminished value of a product regardless of whether it has yet malfunctioned, provided the product contains a manifested defect or current condition affecting value.").  Agee has sufficiently alleged actual damages by alleging that she "paid a higher price" because the products were "something less than [she] expected."  *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019).  This allegation is likewise plausible.

Kroger also argues that Agee has not alleged that the patches she herself purchased were defective.  But based on the FDA report and peer-reviewed study referenced in Agee's complaint, it is plausible to infer, at least for purposes of a motion to dismiss under Rule 12(b)(6), that Kroger's lidocaine patches routinely fail to adhere to the body for the promised length of time.  It does not matter for present purposes that not all of Kroger's patches exhibited this defect; Agee's theory of diminished value holds water for pleadings purposes even if based only on the premise that she would not have

purchased the product had she known there was a significant chance it would not work as advertised.

### 3. Causation

Kroger contends next that Agee has not adequately alleged causation because she does not allege if, or how, she experienced the alleged performance issues with the product. At this point, however, Agee is required to allege only that she purchased the product based on the claimed misrepresentations and that she would not have purchased it, or would have paid less for it, if she had known the truth. *See Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 938, 791 N.E.2d 553, 562 (2003). Agee's complaint meets this standard. She alleges that she "relied on the representations and omissions to believe the Product provided maximum strength lidocaine in the percent indicated, to the areas referenced, and for the time period promised." Compl. ¶ 89. Agee also alleges that she and other potential class members "would not have purchased the Product or paid as much if the true facts had been known." *Id.* ¶ 90. This is sufficient to satisfy the "minimal" required allegation of proximate cause. *Connick*, 174 Ill. 2d at 504, 675 N.E.2d at 595.

### 4. Rule 9(b)

Finally, Kroger contends that the aforementioned allegations do not satisfy Federal Rule of Civil Procedure 9(b) because Agee has not alleged the falsity of the statements with sufficient particularity. This contention lacks merit. Agee has sufficiently alleged that the statements on the label previously discussed are false, via her allegations that the product regularly fails to adhere to the user's body. That's enough to satisfy Rule 9(b). *See Vincent v. City Colleges of Chicago*, 485 F.3d 919,

925 (7th Cir. 2007) (holding that "[t]she complaint [wa]s sufficient" where it "allege[d] precisely the statement . . . that is asserted to be false, and the exact reason . . . why the statement was false").

In sum, the Court denies Kroger's motion to dismiss count 1, except to the extent it is premised on allegations that the phrases "Desensitize Aggravated Nerves" and "Numbing Relief" "For Back, Neck, Knees, Shoulders & Elbows" are misleading and allegations that the phrase "Maximum Strength" "tells consumers it contains and delivers the maximum amount of lidocaine available in patch form and is superior, or at least equivalent, in efficacy and results to other OTC and prescription-strength lidocaine patches." Compl. ¶ 27.

## B. Count 2, consumer fraud multi-state class

Kroger next challenges Agee's proposed consumer fraud multi-state class as alleged in count 2. Agee seeks certification of a multistate class that she describes as including "[a]ll persons in the States of Virginia, Montana, Wyoming, Idaho, Alaska, Virginia, Kentucky, West Virginia, Kansas, Nebraska, North Dakota, Iowa, Mississippi, Arkansas, South Carolina and Utah who purchased the Product during the statutes of limitations for each cause of action alleged." *Id*. ¶ 77. Because Agee's complaint does not identify the particular consumer protection statutes involved for any state other than Illinois, but instead states only that the other states' statutes are similar to ICFA, Kroger contends that this claim should be dismissed. Agee contends, and the Court agrees, that this argument ventures into issues of class certification that are not appropriately addressed at the pleading stage.

The Court agrees with judges in this district who have likened challenges of the

type made by Kroger to an attack on the plaintiff's "ability under Rule 23 to represent the multi-state class"—a question best left for class certification—as opposed to a question of standing. *See, e.g., Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015) (Feinerman, J.). The Court therefore defers consideration of this issue until class certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997) (class certification issues are "logically antecedent" to Article III concerns). Moreover, in *Morrison v. YTB International, Inc.*, 649 F.3d 533 (7th Cir. 2011), the Seventh Circuit indicated that whether a named plaintiff alleging class fraud claims can rely on the law of a single state (as Agee essentially seeks to do in count 2) or must use the laws of each plaintiff's state of residence is a choice-of-law issue and not an issue of standing. *Id*. at 536.

Once the parties have briefed class certification, the Court will be in a better position to determine whether Agee can adequately represent non-Illinois residents to the extent they are pursuing claims under the laws of other states, as well as whether the claims of all potential plaintiffs are suitable for class-wide resolution. The Court therefore denies Kroger's motion to dismiss count 2.

**C.     Count 3, breach of warranty**

**1.     Notice**

In count three, Agee asserts four arguably distinct breach of warranty claims: "Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*." Compl. at 12. Kroger first contends that the Court must dismiss Agee's claims for breach of express and implied warranties because she failed provide Kroger notice of

her claims. To recover for breach of warranty under Illinois law, the buyer "must directly notify the seller of the troublesome nature of the transaction or be barred from recovering." *Connick*, 174 Ill. 2d at 492, 675 N.E.2d at 589; *see also* 815 ILCS 5/2-607(3)(a). A buyer is excepted from this notice requirement only where the seller (1) has actual knowledge of the defect of the particular product or (2) is deemed to have been reasonably notified by the filing of the buyer's complaint alleging breach of warranty under the UCC. *Connick*, 174 Ill. 2d at 492, 675 N.E.2d at 589. Agee contends that she has sufficiently alleged the application of both of these exceptions. The Court disagrees.

Regarding the first exception, Agee alleges that Kroger was actually aware of the product's adhesive defects "due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums." Compl. ¶ 106. But Agee must allege more than simply that Kroger was generally aware of problems with the particular product line. *Anthony v. Country Life Mfg., LLC*, 70 F. App'x 379, 384 (7th Cir. 2003). Rather, she must allege that Kroger was apprised of the trouble with the particular product that she purchased. *Id*. As the Illinois Supreme Court has described it, "it is essential that the seller be notified that *this particular transaction* is troublesome and must be watched." *Connick*, 174 Ill. 2d at 493, 675 N.E.2d at 590. Thus the seller must be aware of the buyer's claim that particular facts constitute a breach. *Id*. at 494, 675 N.E.2d at 590. General complaints by third parties and consumers did not inform Kroger of Agee's claim that the alleged defects in the lidocaine patches she purchased constitutes a breach of warranty. Agee has therefore not adequately alleged that Kroger had actual knowledge of the defect.

15

*Connick* and *Anthony* predominantly involved allegations of product defects, not misleading labeling. But Agee's allegations cannot fairly be characterized as involving labeling alone. Agee alleges that defects in Kroger's product—namely its adhesion issues and the resulting diminished therapeutic effect—are what renders the product's label misleading. Under the circumstances, *Connick* and *Anthony* are controlling.

Nor can Agee avail herself of the second exception. Agee alleges that she provided notice of the breach to Kroger by filing this action in September 2022, a reasonable time after she claims she discovered the breach. But the second exception—under which the seller is deemed to have been reasonably notified of the breach by the filing of the buyer's complaint—"is limited to situations involving personal injury." *Anthony*, 70 F. App'x at 384. Because Agee does not allege that she suffered a personal injury from purchasing and using Kroger's lidocaine patches, she cannot avail herself of this exception.

The Court therefore grants Kroger's motion to dismiss count 3. Because the Court has ruled in Kroger's favor on the notice issue, it need not consider Kroger's other arguments regarding count 3.

## D.     Count 4, negligent misrepresentation

In count 4, Agee alleges that Kroger had a non-delegable duty to "truthfully represent the Product, which it breached," Compl. ¶ 111, by making the same representations and omissions that form the basis for Agee's ICFA claim and breach of warranty claim. "To state a claim for negligent misrepresentation, a plaintiff must allege: (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to

16

act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 334–35, 843 N.E.2d 327, 332 (2006).

As with Agee's ICFA claim, Kroger contends that Agee's allegations are insufficient to plausibly show that Kroger made a materially false statement. This contention fails for the same reasons that the Court articulated with respect to Agee's ICFA allegations.

Kroger next contends that Agee's negligent misrepresentation claim is barred by the "economic loss" doctrine, under which a "plaintiff cannot recover for solely economic loss under the tort theories of strict liability, negligence and innocent misrepresentation." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 91, 435 N.E.2d 443, 453 (1982). A plaintiff asserting a negligent misrepresentation claim may recover for economic damages under an exception to the *Moorman* rule if it establishes that the defendant "(1) is in the business of supplying information for the guidance of others in their business dealings; (2) provided false information; and (3) supplied the information for the guidance of the plaintiff's business transactions." *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 311, 773 N.E.2d 84 (2002).

The Court concludes that Agee has adequately alleged that Kroger, as a seller of OTC medication, is in the business of supplying information for the guidance of others and that it provided false information to consumers regarding its lidocaine patches. Agee alleges that Kroger "h[eld] itself out as having special knowledge and experience in this area, a trusted company known for its high quality products." Compl. ¶ 112. She

also alleges that Kroger has "expanded beyond groceries to non-consumable products, even providing medical services." *Id*. ¶ 50. Agee further alleges that Kroger's false "representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in [Kroger]." *Id*. ¶ 115.

In sum, Agee has sufficiently alleged that Kroger, by virtue of selling medical products directly to consumers, is in the business of providing information to guide consumers in their purchase of OTC medication. Agee has also alleged that she relied on the false information provided by Kroger on its labeling and in other marketing materials. The Court therefore finds that the economic loss doctrine does not bar Agee's negligent misrepresentation claim, and it denies Kroger's motion to dismiss count 4.

**E.     Count 5, common law fraud**

In count 5, Agee alleges that the same misrepresentations and omissions that form the basis of her ICFA, breach of warranty, and negligent misrepresentation claims also support a claim for common law fraud. To sustain a claim for common law fraud, Agee must plead: "(1) a false statement of material fact; (2) [Kroger's] knowledge that the statement was false; (3) [Kroger's] intent that the statement induce [Agee] to act; (4) [Agee's] reliance upon the truth of the statement; and (5) [Agee's] damages resulting from reliance on the statement." *Connick*, 174 Ill. 2d at 496, 675 N.E.2d at 591.

Kroger first contends that Agee has not alleged that Kroger made a false statement of material fact regarding its product. The Court disagrees with that contention for reasons it has already discussed.

The Court agrees with Kroger, however, that Agee has failed to allege that

18

Kroger *knowingly* made a materially false statement. As the Court previously explained regarding the question of notice for Agee's breach of warranty claims, Agee has not adequately alleged that Kroger had actual knowledge of the alleged adhesive defects. Although Agee alleges that Kroger was generally aware of the product's adhesive defects "due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums," Compl. ¶ 106, these allegations are insufficient under Rule 9(b)'s heightened pleading standard. Agee has not, at this point, alleged facts that plausibly suggest that Kroger had actual knowledge—or when it gained that knowledge—that the claims it made on the product's packaging were actually false.

The Court grants Kroger's motion to dismiss count 5 on this basis and thus need not consider Kroger's arguments regarding the other elements of fraud.

## F. Count 6, unjust enrichment

Both parties give short shrift to count 6 in their papers. At a minimum, they both seem to agree that, because Agee's unjust enrichment claim is premised on the same conduct as many of her other claims, the survival or dismissal of the other claims dictates the result of this one. Because the Court has denied Kroger's motion with respect to counts 1, 2, and 4, it also declines to dismiss Agee's unjust enrichment claim.

## G. Injunctive relief

Finally, Kroger asks the Court to strike Agee's request for injunctive relief for lack of standing. It argues that, because Agee is now aware that Kroger's lidocaine patches may not function as advertised, she does not face any likelihood of future injury from Kroger's statements. Agee contends that her inability "to rely on the labeling [of] other

19

similar adhesive lidocaine patches because she is unsure whether those representations are truthful" constitutes a threat of future violations warranting injunctive relief.  Compl. ¶¶ 76, 86.

The Court agrees with Kroger that Agee lacks standing to pursue prospective injunctive relief.  Standing must be established for each type of relief sought by a plaintiff.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).  For the reasons described by the Seventh Circuit in *Camasta v. Jos. A.  Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014), Agee is now aware of possible defects with Kroger's lidocaine patches and thus cannot viably claim deception for any future purchases—or that she has no choice but to purchase this product.  *See id.* at 740-41 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief") (citing *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)).  Her allegations of future harm vis-à-vis other lidocaine patches has no bearing on her risk of future harm from the Kroger patches that are at issue in this case.

The Court therefore strikes Agee's request for injunctive relief.

### Conclusion

For the reasons stated above, the Court denies defendant's motion to dismiss [16] as to count 1 except to the extent it is premised on allegations that "Desensitize Aggravated Nerves" and "Numbing Relief" "For Back, Neck, Knees, Shoulders & Elbows" is misleading, or that "Maximum Strength" "tells consumers it contains and delivers the maximum amount of lidocaine available in patch form and is superior, or at least equivalent, in efficacy and results to other OTC and prescription-strength lidocaine patches."  Compl. ¶ 27.  The Court also declines to dismiss counts 2, 4, and 6 but

dismisses counts 3 and 5 for failure to state a claim.  Finally, the Court strikes Agee's request for injunctive relief for lack of standing.  The parties are directed to confer and attempt to agree on a schedule for discovery and pretrial proceedings and are to file a joint status report with a proposed schedule by no later than May 3, 2023.  A telephonic status hearing is set for May 9, 2023 at 9:15 a.m., using call-in number 888-684-8852, access code 746-1053.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  April 19, 2023